J-S12022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| YUSEF KEMP, | |
| Appellant | No. 1768 EDA 2015 |

Appeal from the Judgment of Sentence of April 29, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007549-2013

BEFORE:  MUNDY, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 17, 2016**

Appellant, Yusef Kemp, appeals from the judgment of sentence entered on April 29, 2015, as made final by the denial of Appellant's post-sentence motion on May 11, 2015.  On this direct appeal, Appellant's court-appointed counsel has filed both a petition to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[1]  We conclude that Appellant's counsel has complied with the procedural requirements necessary to affect withdrawal.  Moreover, after independently reviewing the record, we conclude that the instant appeal is wholly frivolous.  We,

---

[1] **See also Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

*Retired Senior Judge assigned to the Superior Court.

therefore, grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The trial court ably summarized the underlying facts and procedural posture of this appeal. As the trial court explained:

[Appellant] admitted to the following facts during the guilty plea [hearing]:

On December 5[], 2012, at approximately 9:44 p.m. near 1901 North 27th Street in Philadelphia, which is the Johnson Homes Housing Project[,] the facts establish [that Appellant] shot and killed Renard Rushin Wright.

At the time[,] Renard Wright was 20 years old.

There was a call to 911 made that night by Neva Fairy[,] who lives in Unit H of the Johnson Homes Projects. At that time police officers responded. They found Mr. Rushin Wright in the home of Ms. Fairy. At that point officers took him to the hospital and upon his arrival at the hospital he was pronounced dead.

Crime scene officers responded to the scene, recovered several .380 caliber fired cartridge casings in a breezeway near Unit H. They photographed the scene.

. . .

Homicide detectives were assigned to investigate this case. On December 5[], 2012, a statement was taken from Ms. [Fairy]. . . . She [stated that] she knew the decedent[. Ms. Fairy stated that the decedent] came into her house, that he said he had been shot, that he believed he was going to die, and she said she also called 911. . . .

In her statement of December 5, 2012, [Ms. Fairy said that] she asked the decedent who it was who shot him and he said he didn't know.

Subsequently[,] . . . on February 11[], 2013, Ms. Fairy was re-interviewed by homicide detectives. At that point[,] she said that her initial statement was correct and truthful except for the part that she says when she asked [the decedent] who it was that shot him that he responded "Yusef shot me" and that her daughter was present when this happened.

Detective asked her why she was not forthcoming with this information in December and she said [] she knew she would have to testify and she was really scared. She also said, [] "I'm really scared[.] I have young kids and I live right here in these homes and everybody knows everyone else's business and I know what these people are capable of."

. . . [Ms. Fairy] also knew [Appellant] for several years.

Walter Ross was interviewed on December 7[], 2012. Walter Ross gave a statement in which he said that he was with [the decedent] that night, that he heard the shooting, but that he . . . was not present for the shooting. . . .

Walter Ross was re-interviewed on February 15[,] 2013, and . . . he acknowledged to detectives that his prior statement from December was not entirely truthful, especially with regards to his presence [during] the shooting of [the decedent. In his February statement, Walter Ross told detectives:] "When I come out of Neva['s] house, that's when I run into Renard. He was walking up to Neva's door. He yelled over to me, I turned around and we start talking and shit and I was telling boy where I was going. I was telling him I'm going back to Nadira's house. As I'm talking to him, I see Yusef come up behind Renard and he puts this gun up and he points it right at us and he starts shooting."

Mr. Ross was asked why he was not entirely honest in his December statement. He told the detectives, [] "Because I've been scared to telling anyone because people run their mouth. I heard right away that people knew who killed Renard, so that was another reason why I didn't say anything. I knew they knew who did it,

- 3 -

so I knew if I said something that it would come back on me."

Mr. Ross also knew [Appellant] for several years by face and name from the Johnson Homes Projects.

A witness was interviewed on February 28th by the name of Shika Gibson. She gave a statement . . . and in summary it says that she saw [Appellant] shoot [the decedent] at the location that we have described.

A witness named Donna Hunter was interviewed on December 19[], 2012. Ms. Hunter told Philadelphia homicide detectives that she lives in Unit K of the Johnson Homes Projects, that she saw [Appellant] who she knows run past her apartment carrying a gun after she had heard shots. Ms. Hunter refused to sign her statement. . . .

Jalil Harris was also interviewed and he [said] that Donna Hunter told him the same thing that she told the police, that she saw [Appellant] run by her house carrying a gun.

The remains of [the decedent] were taken to the Medical Examiner's Office where an autopsy was conducted. . . . [The Medical Examiner] found . . . a perforating gunshot wound to the front of [the decedent's] abdomen and a penetrating gunshot wound to the rear of [the decedent's] abdomen. A [] .380 bullet was recovered from the body of [the decedent]. . . .

These gunshot wounds lacerated [the decedent's] liver and caused other injuries, including injuries to his kidneys, and it would be the opinion of [the Medical Examiner] that the cause of death was a gunshot wound to the abdomen and the manner of death was homicide.

. . .

[Appellant] was ineligible to possess a firearm at the time of this incident.

. . .

On March 9, 2014, [Appellant] was arrested and charged with murder, firearms not to be carried without a license, possession of [a firearm by a prohibited person], carrying firearms in a public place in Philadelphia, and possession of an instrument of crime ("PIC").[2]

On February 9, 2015, [Appellant] appeared before th[e trial] court and entered [] an open guilty plea to the charges of third-degree murder, firearms not to be carried without a license, possession of [a firearm by a prohibited person], and PIC. . . .[fn.1]

    [fn.1] The charge of carrying firearms in a public place in Philadelphia was *nolle prossed*.

On April 20, 2015, [the trial] court sentenced [Appellant] to [serve 20 to 45 years in prison for his third-degree murder conviction and to serve a consecutive, aggregate term of two-and-a-half to five years in prison for his remaining convictions]. . . .

After [the trial court] realized it had imposed an illegal maximum sentence on the third-degree murder [conviction], th[e trial] court immediately informed both defense counsel and the Commonwealth. On April 29, 2015, [Appellant] filed a Motion to Vacate Illegal Sentence and Impose a Legal Sentence. That same day, th[e trial] court granted [Appellant's] motion and re-sentenced him to [serve 20 to 40 years in prison for the third-degree murder conviction and to serve a consecutive, aggregate sentence of two-and-a-half to ten years in prison for the remaining convictions. As Appellant acknowledges in his brief to the Pennsylvania Superior Court, all of Appellant's sentences either fell within the "standard" or the "mitigated" sentencing ranges. Appellant's Brief at 14].

---

[2] 18 Pa.C.S.A. §§ 2502, 6106(a)(1), 6105(a)(1), 6108(1), and 907(a), respectively.

On May 8, 2015, [Appellant] filed a timely post-sentence motion, requesting that [the trial court] reconsider his sentence. [Specifically, Appellant claimed that the trial court "erred in sentencing [Appellant] by failing to adequately consider the argument of the defense for a less[er] sentence." Appellant's Post-Sentence Motion, 5/8/15, at 2. The trial court] denied the [post-sentence] motion on May 11, 2015. On June 9, 2015, [Appellant] filed a notice of appeal to [the] Superior Court. . . .

Trial Court Opinion, 7/30/15, at 1-5 (some internal capitalization and corrections omitted), *quoting in part* N.T. Guilty Plea Hearing, 2/9/15, at 22-32.

On appeal, Appellant's court-appointed counsel filed a petition for leave to withdraw and accompanied this petition with an **Anders** brief. Within the **Anders** brief, Appellant raises the following claim:[3]

Did the [trial] court commit an abuse of discretion [at sentencing] by not considering Appellant's arguments for a lesser sentence and imposing an excessive sentence?

Appellant's Brief at 11.

Before reviewing the merits of this appeal, this Court must first determine whether counsel fulfilled the necessary procedural requirements for withdrawing as counsel. **Commonwealth v. Miller**, 715 A.2d 1203, 1207 (Pa. Super. 1998).

_____

[3] The trial court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). In accordance with Pa.R.A.P. 1925(c)(4), Appellant's court-appointed counsel filed a "statement of intent to file an **Anders**/**McClendon** brief in lieu of filing a [Pa.R.A.P. 1925(b) s]tatement." Pa.R.A.P. 1925(c)(4).

To withdraw under **Anders**, court-appointed counsel must satisfy certain technical requirements. First, counsel must "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous." **Miller**, 715 A.2d at 1207. Second, counsel must file an **Anders** brief, in which counsel:

> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Finally, counsel must furnish a copy of the **Anders** brief to his client and advise the client "of [the client's] right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention." **Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007).

If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Santiago**, 978 A.2d at 355 n.5, *quoting* **McClendon**, 434 A.2d at 1187. It is only when both the procedural and

substantive requirements are satisfied that counsel will be permitted to withdraw.

In the case at bar, counsel met all of the above procedural obligations. We must, therefore, review the record and analyze whether this appeal is, in fact, wholly frivolous. Our analysis begins with the issue raised in the *Anders* brief.

Appellant claims that the trial court abused its discretion at sentencing by failing to consider his mitigating evidence. Appellant's Brief at 12. We cannot review Appellant's claim.

Appellant's challenge is to the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Moreover, pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

> [t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is

- 8 -

> not appropriate under the Sentencing Code, [42 Pa.C.S.A.]
> § 9781(b).

***Commonwealth v. Cook***, 941 A.2d 7, 11 (Pa. Super. 2007).

In the case at bar, Appellant satisfied the first three requirements, as he filed a timely notice of appeal, properly preserved his discretionary challenge in a post-sentence motion, and facially complied with Pennsylvania Rule of Appellate Procedure 2119(f). We must now determine whether Appellant presented a "substantial question that the sentence appealed from is not appropriate under the Sentencing Code." ***Cook***, 941 A.2d at 11.

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. McKiel***, 629 A.2d 1012, 1013 (Pa. Super. 1993); ***Commonwealth v. Goggins***, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). Moreover, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. ***Goggins***, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id.*** at 727 (internal emphasis omitted).

In his brief to this Court, Appellant acknowledges that all of his sentences fall either within the "standard" or the "mitigated" sentencing ranges. Appellant's Brief at 14. Yet, as Appellant claims, his aggregate sentence of 22 ½ to 50 years in prison was manifestly excessive because the trial court "did not consider" such mitigating evidence as: the "numerous letters . . . that described [A]ppellant as a good person who was loved and respected by his family and neighbors;" the information Appellant provided detectives regarding an unrelated homicide; and, Appellant's decision to plead guilty. *Id.* at 12.

Appellant's claim does not raise a substantial question under the Sentencing Code. *See Commonwealth v. McNabb*, 819 A.2d 54, 57 (Pa. Super. 2003) ("an allegation that the sentencing court did not consider certain mitigating factors does not raise a substantial question"); *see Commonwealth v. Dunphy*, 20 A.3d 1215, 1222 (Pa. Super. 2011) ("[a]n allegation that the sentencing court 'failed to consider' or 'did not adequately consider' various factors does not raise a substantial question that the sentence was inappropriate"), *quoting McKiel*, 629 A.2d at 1013; *see also Commonwealth v. Felmlee*, 828 A.2d 1105, 1106 (Pa. Super. 2003) (a claim that the trial court "erred by imposing an **aggravated range** sentence without consideration of mitigating circumstances raises a substantial question") (emphasis added). Therefore, we may not reach the merits of Appellant's claim.

We have independently considered the issue raised within Appellant's brief and have determined that it is frivolous. In addition, after an independent review of the entire record, we see nothing that might arguably support this appeal. The appeal is therefore wholly frivolous. Accordingly, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw appearance.

Petition to withdraw appearance granted. Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2016